## NEWBURY.

A town having voted to send six representatives, to be voted for on one ticket, some of the electors brought in their ballots for the whole number; some for a less number; some six separate ballots with one name on each; and one voter, after having carried in a ballot with one name on it, carried in a second with five names on it. After the votes were thus received, they were cut and severed before they were counted. It was held, that the manner, in which the votes were received, dealt with and counted, rendered it impossible to determine the number of persons, who voted in the election, and that the election was therefore void.

THE election of Daniel Emery, Silas Little, John Osgood, Ebenezer Hale, Josiah Little, and Oliver Pilsbury, members returned from the town of Newbury, was controverted by Nathaniel Emery and others, on the ground, that the manner of voting at the election was such as rendered it impossible to ascertain how many persons voted, and consequently that it was uncertain, whether any or either of the members returned received a majority of the votes.[1]

[1] 35 J. H. 20.

At the January session, the committee on elections made the following report, which was agreed to, namely[1] : —

" A meeting, duly convened for the choice of representatives from said town, was there holden on the twelfth day of May last; at which it was voted to send six representatives, and also voted, that the votes should be brought in for the same on one ticket. The selectmen presiding received an unknown number brought in that manner, and some with three, four, and five names thereon, and from some voters they received six separate ballots with one name on each; and one voter after having carried in a ballot for one representative, (not knowing the manner of voting) was afterwards permitted to carry in another ballot, with five names. After the votes were received as aforesaid, they were principally cut and severed, before they were counted.

The committee further report, that from a copy of the record of the meeting, it appears that after the votes were severed as aforesaid and counted, there were for Daniel Emery, 164 votes; Silas Little, Esq., 168 ; John Osgood, Esq., 127 ; Col. Ebenezer Hale, 517 ; Josiah Little, Esq., 109 ; Major Oliver Pilsbury, 138 ; John Rollins, 85 ; Capt. David Little, 22 ; Capt. Thomas Carter, 24 ; Moses Little, Esq., 2 ; Jacob Little, 2 ; Richard Pike, 5 ; Nathaniel Moody, 2 ; Nathaniel Emery, 1 ; Jacob Morril, 2 ; John Obrien, 1 ; Edmund Little, 1 ; Moses Dole, Jun., 1 ; Paul Adams, 1. And that the gentlemen having the six highest numbers, in the above list, were considered as chosen.

The committee further report, that by several depositions produced from persons attending the meeting, it appeared to be their belief and opinion, that not more than two hundred persons voted at said election, but they mentioned no circumstances, either by counting or otherwise, which led them to such belief.

The committee do further report, that the irregular manner in which the ballots were received, as also the severing them before they were counted, rendered it impossible to determine the number of persons voting in said election, and thereby

[1] 35 J. H. 432, 446.

ascertain what number constituted a majority; and as all elections of members of this house should ever be certain, and it appearing to the committee from the proceedings aforesaid, that it is uncertain whether the members returned were actually elected, not knowing whether each of them had a majority of the votes, the committee ask leave to report, and do unanimously report, that the said Daniel Emery, Silas Little, John Osgood, Ebenezer Hale, Josiah Little and Oliver Pilsbury, Esquires, were not legally chosen, and are not entitled to seats in this house, and that the same be declared vacated."

NOTE. The principal ground of the decision, in the foregoing case, was the uncertainty of the election.

A note would not have been subjoined in this place, but at the request of some very intelligent members of the house, who expressed an apprehension that the facts stated in the above report would not, upon strict examination, warrant the conclusion, which the committee have drawn.

The whole number of votes, according to the report, must have been one thousand and twelve. Had the common method of ascertaining the majority in such cases been adopted, namely: dividing the whole number by the number which the town had voted to send, the result would have been, that no one had a majority; 168 (the highest number) being a fraction less than one-sixth. Such a method, however, was proved to be fallacious, and decided to be improper, in the case of the Charlestown election, in 1813.

In the above case, it is obvious to observe, in the first place, that the number of tickets, which contained six names, was unknown. It might have been only twenty, or it might have been one hundred and sixty-eight. In the next place, there is the same uncertainty as to the number of tickets, which contained three, four, and five names; with the still further uncertainty, respecting the number of those who gave in "six separate ballots, with one name on each." And though no suspicion of fraud or unfairness was suggested, yet, for aught that appears, those who gave in six separate ballots might have given them all for one candidate. It is demonstrable, that if

25

this had been done by as many as twenty-five voters, it would have overbalanced the whole number (149) given for those, who were not returned as elected.  It would seem, that nothing could be more plain than that a majority of votes might thus have been given by a minority of the voters.  Many other illustrations, equally strong, are suggested by the facts stated in the report.

Although there is the highest degree of probability, that those, who were returned, were chosen by a majority of the electors, yet, the house decided that nothing short of legal certainty would entitle them to retain their seats.  The case of the Wrentham election in 1809 (*ante*, 70), which was the same in principle, was decided in the same manner, and considered as a binding precedent.

After the acceptance of the report, it was ordered, that the committee on the pay roll be directed to make up the travel and attendance of the members from Newbury, during the present session of the general court, to this day (February 25th) inclusive.[1]